UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
NOEL VELASQUEZ, et al.,        : 11-CV-3892(LDW)(AKT)
              Plaintiff,    :
                          :
   - versus -                 : U.S. Courthouse
                          : Central Islip, New York
DIGITAL PAGE, INC., et al.,    :
              Defendant     : April 26, 2012
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE

**A**    **P**    **P**    **E**    **A**    **R**    **A**    **N**    **C**    **E**    **S:**


**For the Plaintiff:**           **James Vagnini, Esq.**
                                     **Justin Levy, Esq.**
                                     Valli, Kane & Vagnini
                                     600 Old Country Road
                                     Garden City, New York 11530


**For the Defendant:**          **Joseph Labuda, Esq.**
                                     Milman Labuda Law Group
                                     3000 Marcus Avenue
                                     Lake Success, New York


**Transcription Service:**     **Transcriptions Plus II, Inc.**
                                     3859 Tiana Street
                                     Seaford, NY  11783
                                     Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1        THE CLERK:  Civil Cause for Status Conference,

2   Velasquez, et al. v. Digital Page, Inc., et al., under

3   11-cv-3892.

4        Counsel, appearances.

5        MR. VAGNINI:  James Vagnini and Justin Levy for

6   the plaintiffs.

7        THE COURT:  Good morning.

8        MR. LABUDA:  Good morning, your Honor.

9        Joseph Labuda for the defendants.

10       THE COURT:  Good morning.  Have a seat.  We

11  have a lot of ground to cover today.  So, I'm going to

12  get right into it.

13       First of all, dealing with the class -- I

14  should say the collective action certification, excuse

15  me, on August 12, plaintiffs Noel Velasquez and Carlos

16  Rivera brought this action against defendants Digital

17  Page, Inc., Cellular Consultants, Inc. or CCI, Cellular

18  Consultants of Nassau, Inc., which I will refer to as CC

19  of Nassau, Cellular Consultants of Nassau ST 1, which I

20  will refer to as CC of Nassau ST -- I don't know, is it I

21  or 1 here?  I'm trying to figure that out.  Do you know?

22       MR. VAGNINI:  I'm not sure, your Honor.

23       THE COURT:  All right.  And Cellular

24  Consultants of Farmingdale, which I will refer to as CC

25  of Farmingdale, along with Brandon Haenel and Robert

3

Proceedings

1   Pachtman, for failing to properly compensate them and

2   others similarly situated regarding overtime pay in

3   violation of the FLSA and the New York Labor Law.

4          Each of the defendant entities are alleged to

5   be doing business under the name Fusion Wireless.  Haenel

6   and Pachtman allege to have an ownership -- correlation

7   of ownership stake in Fusion Wireless.

8          The complaint alleges that the defendants

9   Digital Page, CCI, CC of Nassau, and CC of Nassau ST I,

10  are all located at 65 Main Street, Port Washington,

11  whereas CC of Farmingdale is located at 1709 Crosby

12  Avenue in the Bronx.

13         There appears to be a typographical error in

14  the complaint.  Based on a reading of the complaint as a

15  whole, the November 28, 2011 declaration of Brandon

16  Haenel which is a DE-29 and the December 22, 2011

17  affidavit of Carlos Rivera, which is DE-25, Exhibit 1, in

18  those documents it appears that Digital Page is actually

19  located at 1011 Port Washington Boulevard and not 65 Main

20  Street.

21         In addition to the locations at 65 Main Street

22  and 1709 Crosby Avenue, plaintiffs allege that Fusion

23  Wireless has five other locations; 1011 Port Washington

24  Boulevard in Port Washington, 99 Nassau Street in New

25  York, 4260 Broadway, New York and 514 Union Boulevard,

4

Proceedings

1    West Islip and 387 Independence Boulevard in Selden.

2              On December 22, 2011, the plaintiffs moved,

3    among other things, for a collective action certification

4    and for notice to be sent to putative collective action

5    members, pursuant to 29 USC Section 216(b).

6              I note first of all, that no where in the

7    motion papers do the plaintiffs define the class.  The

8    Court went back therefore, to the complaint, which seeks

9    conditional certification of a class consisting of

10   "current and former employees of defendants who perform

11   any work in any of defendant's locations as non-

12   managerial employees who give consent to file a cause of

13   action to recover overtime compensation which is legally

14   due them for the time worked in excess of forty hours in

15   a given work week."  That's at paragraph 16 of the

16   complaint.

17             Collective actions under the FLSA are

18   authorized by Section 216(b) which provides in pertinent

19   part as follows:

20             "An action may be maintained against any

21   employer by any one or more employees for and on behalf

22   of himself or themselves and other employees similarly

23   situated.  No employee shall be a party plaintiff to any

24   such action unless he gives his consent in writing to

25   become such a party and such consent is filed in the

5

Proceedings

1    Court in which such action is brought."

2         As such, district courts have discretion to
3    authorize the sending of notice to putative plaintiffs.
4    See, for example, Myers v. Hertz Corp. 624 F.3d 537 at
5    554 (2d. Cir 2010) quoting Hoffman-LaRoche v. Sperling
6    493 US 165.

7         Courts within the Second Circuit apply a two-
8    step analysis to determine whether an action should be
9    certified as an FLSA collective action.  See for example,
10   Bifulco v. Mortgage Zone, Inc. 262 FRD 209 at 212 (EDNY
11   2009) and Rubery v. Buth-Na-Bodhaige, Inc., 569 F.Supp.
12   2d 334, 336 (WDNY 2008).

13        First, the Court looks at the pleadings and
14   affidavit to determine whether the putative (ph.)s are
15   similarly situated to the named plaintiffs.  See
16   Lewis v. National Financial Systems, Inc. 2007 Westlaw
17   2455130 at *2.  That's an August 27, 2007 case from the
18   eastern district.  See also Rodolico v. Unisys Corp. 199
19   FRD 468 at 480.  That's a 2001 case from the eastern
20   district.

21        If the Court decides in the affirmative, then
22   the proposed class members must consent in writing to be
23   bound by the result of the suit or opt-in.  The second
24   step, which typically occurs after the completion of
25   discovery involves the Court making a factual finding

6

Proceedings

1  based on the developed record as to whether the opt-in

2  plaintiffs are actually similarly situated to the named

3  plaintiffs.  That's from Bifulco at 262 FRD at 212.

4          The instant motion concerns only the first

5  step, whether the proposed class members are "similarly

6  situated", such that conditional certification should be

7  granted.  At this stage, the evidentiary standard is

8  lenient.  That's from Rubery 569 F.Supp 2d at 336 and the

9  plaintiffs need only make a modest factual showing

10  sufficient to demonstrate that they and potential

11  plaintiffs together were victims of a common policy or

12  plan that violated the law.  That is from Doucoure v.

13  Matlyn Food, Inc. 554 F.Supp 2d 369 at 372 (EDNY 2008)

14  quoting Hoffman v. Sbarro 982 F.Supp 249 at 261 (SDNY

15  1997).  "In making this showing, nothing more than

16  substantial allegations that the putative class members

17  were together, the victims of a single decision policy or

18  plan is required."

19          Sexton v. Franklin First Financial Ltd. 2009

20  Westlaw 1706535 at *3, Eastern District of New York June

21  16, 2009.  This determination is typically based on the

22  pleadings, affidavits and declarations.  See Sexton 2009

23  Westlaw 1706535 at *3.  See also Guan Ming Lin, a case

24  which I am going to refer to again shortly which is an

25  important case, Guan Ming Lin v. Benihana 755 F.Supp 2d.

7

Proceedings

1    504 at 509 (SDNY 2010), finding that for plaintiffs to

2    make the necessary factual showing, they can rely on the

3    pleadings but only as supplemented by other evidence such

4    as affidavits from named plaintiffs, opt-in plaintiffs or

5    other putative collection action members.

6         Essentially, the burden of proof here is not a

7    stringent one and the Court need only reach a preliminary

8    determination that potential class members are similarly

9    situated.  In support of the motion, plaintiffs submit

10   their own affidavits, as well as an affidavit from

11   Michael Nozario (ph.), a purported employee of Fusion

12   Wireless who filed a consent to join form on October 5,

13   2011.

14        Plaintiff Velasquez was hired by CCI as a sales

15   associate in 2008.  That's both from the complaint and

16   from his own affidavit.  Velasquez states that he worked

17   at CCI from January 2008 until January 2010.  His work

18   duties at CCI included sales and customer service.

19   Velasquez states that he was required to work five or six

20   days per week, averaging between fifty and sixty hours.

21   In the complaint, Velasquez states that his hours

22   corresponded with CCI's regular business hours which were

23   9 a.m. to 8:00 p.m. on the weekdays, 9 a.m. to 7:00 p.m.

24   on Saturday and 11 a.m. to 4:30 p.m. on Sunday.  Despite

25   working over forty hours each week, Velasquez alleges

8

Proceedings

1   that he was only compensated at his straight rate of pay

2   for those hours worked over forty.  That rate of pay was

3   $10 per hour until April 17, 2010 when Velasquez got a

4   raise to $11.50 per hour.

5          Plaintiff Rivera was hired by Digital Page as a

6   communications specialist in 2009; again, from the

7   complaint, as well as his own affidavit.  Rivera worked

8   at Digital Page from the end of 2009 until April 1, 2011.

9   His work duties included maintaining the store, repairing

10  phones, inventory and sales.  Rivera states that he was

11  required to work five to six days per week, averaging

12  between fifty and sixty hours.  When he was assigned to

13  work six days a week, Rivera claims to have worked closer

14  to seventy hours.  Rivera's alleged hours correlated with

15  a Digital Page's hours of business which were in from

16  9:00 a.m. to 8:00 p.m. on the weekdays, 9:00 a.m. to 7:00

17  p.m. on Saturday and 11 a.m. to 4:30 p.m. on Sunday.

18         Despite working over forty hours each week,

19  Rivera also alleges that he was only compensated at his

20  straight rate of pay for those hours worked over forty.

21  Rivera's rate of pay was $9 per hour.

22         Plaintiffs also submit an affidavit from

23  Michael Nozario, a purported employee of digital page

24  from the end of January 2010 to August 31 of 2010.  There

25  appears to be a great deal of confusion surrounding

9

Proceedings

1    Nozario's employment.  Nozario claims that he worked for

2    a time at a Digital Page store located at 1709 Crosby

3    Avenue.  However, the complaint alleges that CC of

4    Farmingdale was located at 1709 Crosby Avenue.  Further,

5    despite Nozario stating that he approached defendant

6    Haenel about his pay -- that's from his declaration at

7    paragraph 10 -- defendant Haenel maintains that Digital

8    Page only performs business at 1011 Port Washington

9    Boulevard and that Nozario was never employed by Digital

10   Page or CCI.

11           In response to Haenel's declaration, the

12   plaintiffs submitted various paystubs of Nozario.

13   Unfortunately, these pay stubs only add to the overall

14   confusion.  Three pay stubs dated February 5, February 19

15   and March 12, 2010 were issued on behalf of CC of Nassau

16   located at 65 Main Street.  However, for two pay stubs

17   dated April 16 and May 14, 2010, the checks were issued

18   on behalf of CC of Nassau ST I, located at 65 Main

19   Street.  Nozario's June 18, 2010 pay stub shows yet

20   another change.  The check is issued on behalf of CC of

21   Farmingdale located at 65 Main Street.  Lastly, Nozario's

22   July 16 and August 20, 2010 pay stubs indicate the checks

23   were issued on behalf of CC of Farmingdale, now located

24   in the Bronx at 1709 Crosby Avenue.

25           Nozario alleges that he worked at Digital Page

Proceedings

1   Stores located at 99 Nassau Street and 1709 Crosby

2   Avenue.  At the Nassau Street store, Nozario states that

3   was a sales associate responsible for selling phones.  At

4   this location, Nozario alleges to have worked on average

5   fifty to sixty hours per week.  His hours correlated with

6   the store's hours of business, which were from 9:00 a.m.

7   to 8:00 p.m. on the weekdays, 9:00 a.m. to 7:00 p.m. on

8   Saturday and 11:00 a.m. to 4:30 p.m. on Sunday.

9          At the Crosby Avenue store, Nozario claims to

10  have been the only employee at this store from June 1,

11  2010 to the last week of July 2010.  During this time,

12  Nozario maintains that he worked all business hours,

13  seven days a week, which averaged approximately 75 hours.

14  During the last week of July 2010, another employee was

15  hired, resulting in Nozario then having Sundays off.

16         Similar to the named plaintiffs, Nozario claims

17  that despite working over forty hours each week, he was

18  only compensated at his straight rate of pay for those

19  hours worked over forty.  According to Nozario, his rate

20  of pay was $9 per hour.  However, Nozario also indicates

21  in his affidavit that commission payments were added to

22  the last paycheck each month.

23         Plaintiffs assert that all of defendant's non-

24  managerial employees were required to work over forty

25  hours per week and were not compensated at the required

11

Proceedings

1    time and a half pay for hours over forty per week.

2          First, I find that the defined class here is

3    both overly broad and ambiguous.  The terms "non-

4    managerial employees" covers a multitude of

5    possibilities, none of which are clarified by these

6    motion papers.  Taken to its logical inference, this

7    class could include secretaries, clerical workers,

8    maintenance staff, receptionists, et cetera.

9          The only common identifier referred to

10   subsequently is the term "sales associate".  Perhaps that

11   is the intended class.  The Court has no way of knowing

12   here.

13         The submitted evidence fails to make the modest

14   factual showing needed to support a preliminary

15   determination that there may be other similarly situated

16   individuals who should be notified of their opportunity

17   to join this suit as plaintiffs.  In each of the three

18   affidavits, the only mention of other perspective members

19   is the following sentence.  "I have knowledge and belief

20   that the other non-managerial employees also worked over

21   forty hours per week and were not compensated for any

22   hours over forty."  That's in the Velasquez affidavit at

23   paragraph 9, the Rivera affidavit at paragraph 8 and the

24   Nozario declaration at paragraph 9.

25         Lacking from the affidavits, however, is the

12

Proceedings

1   basis for each of the affiant's alleged knowledge or

2   belief that other defendant employees work over forty

3   hours and are not being properly compensated.  In fact,

4   none of the affidavits even reference that there are

5   other members of the putative collection action from

6   their own stores, let alone other purported defendant

7   establishments.

8           Even the circumstances surrounding the opt-in

9   plaintiff differs from the named plaintiffs.  Nozario

10  indicates that his hourly rate was supplemented by a

11  monthly commission.  Nozario further alleges that when he

12  inquired about why he was not getting paid overtime, the

13  defendants informed him that commissioned employees were

14  not entitled to overtime.  Neither of the plaintiffs

15  indicate that they were paid on a commission basis, so

16  how are they "similarly situated" to Nozario?

17          The content of these affidavits is in stark

18  contrast to those which court's have found establish the

19  necessary evidentiary showing.  For example, in another

20  case of mine, Moore v. Eagle Sanitation, which can be

21  found at 276 FRD 54.  It's a case from last year.  In

22  that case, I certified a collective action where each

23  named plaintiffs submitted an affidavit which

24  specifically named additional co-workers employed as

25  sanitation workers who were also allegedly not properly

13

Proceedings

1   compensated and where each plaintiff stated that his

2   knowledge of the other laborers working in excess of

3   forty hours per week without being compensated for

4   overtime hours, was based upon the fact that they

5   specifically discussed this matter among themselves with

6   the other employees.  That's at 276 FRD at 58.

7           The plaintiffs in this case state that they

8   have knowledge of other employees who have not received

9   overtime compensation.  Well, who are those people?  What

10  specific observation did the named plaintiffs make to

11  support factually that these fellow workers actually

12  worked more than forty hours a week.

13          I commend to your attention the decision which

14  I referenced earlier.  It's Judge Francis' decision in

15  Guan Ming Lin v. Benihana, 755 F.Supp 2d 504 (SDNY 2010).

16  in that case, the three plaintiffs were current and

17  former employees of Haru Saki Bar, a restaurant owned and

18  operated by the defendant.  Two of the plaintiffs, Guan

19  Ming Lin and Zeng Guan Li had been employed by Haru Too

20  as delivery persons since May 2004 and May 2006.

21          The third plaintiff, Qi Li, was employed by

22  Haru Too, as a delivery person from 2001 until August of

23  2009.  The variation in the plaintiff's base rates of pay

24  was due to their using different types of vehicles to

25  make deliveries.  Delivery persons who drove faster

14

Proceedings

1  vehicles such as mopeds and motor bikes made higher base

2  salaries while delivery persons who rode bicycles earned

3  lower base salaries.

4        The plaintiffs also there stated that they had

5  observed other employees not being reimbursed for things

6  like uniform expenses.  Plaintiff Lin alleged that his

7  hourly base pay of $4.90 was less than the minimum wage

8  and that he had observed other employees also being paid

9  a base salary which was less than the minimum wage.

10        In addition, the declarations of all three

11  plaintiffs there stated with regard to tips reported for

12  tax purposes, defendants automatically reported ten

13  percent of all gross sales of food delivered as tips

14  received by delivery persons.  Defendants Haru Too, Haru

15  Amsterdam Avenue Corp., Haru Gramercy Park Corp., Haru

16  Park Wall Street Corp., each owned and operated

17  individual Haru restaurants in different locations around

18  New York City.

19        In that case, Judge Francis found that the

20  threshold question was whether the plaintiffs had shown

21  that the proposed members of the collective action were

22  similarly situated.  He noted that the term similarly

23  situated is not defined by the FLSA or its implementing

24  regulations.  However, he went on to note that courts

25  have determined that the applicable test is whether the

Proceedings

1    plaintiffs have established a sufficient factual nexus

2    between their situation and the situation of other

3    putative class -- excuse me -- other putative collection

4    action members.  In making such a showing, plaintiffs can

5    rely on the pleadings but only as supplemented by other

6    evidence such as affidavits from named plaintiffs, opt-in

7    plaintiffs or other putative collection action members.

8         Judge Francis went on to note that "Although

9    the plaintiff need only make a modest showing that the

10   putative collection action members are similarly

11   situated, the evidence must be sufficient to demonstrate

12   that current and potential plaintiffs together were

13   victims of a common policy or plan that violated the law.

14   Furthermore, the plaintiffs supporting allegations must

15   be specific and not conclusory."

16        In discussing one of the plaintiffs, Mr. Lin,

17   Judge Francis noted that "He provided even less

18   information about other employees whom he stated he had

19   observed being paid a base salary below the minimum wage.

20   It is unclear," Judge Francis noted, "who they are, what

21   their base salary is, whether they are delivery persons

22   or even tipped employees or whether they worked for Haru,

23   Too or another of the Haru restaurants."

24        He concluded, "Mr. Lin's allegations are thus

25   too conclusory to establish the requisite factual nexus

16

Proceedings

1   with other members of the putative collective action."

2        Judge Francis went onto find that "Neither Qi

3   Li nor either of the other plaintiffs stated in their

4   declarations that they were aware of other employees at

5   any of the Haru restaurants who had not been paid proper

6   overtime wages.  The plaintiffs thus failed to allege the

7   requisite factual nexus between individual plaintiff Qi

8   Li's unpaid overtime claim and the treatment of other

9   employees of Haru, Too or the Haru restaurants."  And he

10  cited a case, Mendoza 2008 Westlaw 938584 at *2 in which

11  the Court found that the plaintiffs failed to allege

12  sufficient factual nexus where numerous named plaintiffs

13  submitted affidavits stating that they had worked

14  uncompensated overtime but failed to make similar

15  allegations regarding other putative class members.

16        Judge Francis went on to note that "The

17  plaintiffs in the case before him provided no details

18  regarding the other employees that they had observed

19  beyond the conclusory statements contained in their own

20  declarations.  The names, wage rates and tools of the

21  trade expenditures of these employees are unknown," as he

22  said, "and the plaintiffs have failed to submit

23  declarations from any non-plaintiffs stating the amount

24  of their expenses or the impact of those expenses on

25  their wages."

Proceedings

1       With regard to the notice, Judge Francis noted

2  that, "As part of the motion for collective action

3  certification, the plaintiffs request that the Court

4  approve and order the issuance of notice to all potential

5  collective action members.  Because certifying a

6  collective action on any claim in this matter is

7  unwarranted, the Court will not approve any form of

8  notice at this time."

9       He went on to state that "The plaintiffs also

10  requested that the Court order the defendants to produce

11  the names, last known mailing addresses, alternate

12  addresses, telephone numbers, social security numbers,

13  and dates of employment of all delivery persons employed

14  by the defendants within the last three years."

15       In issuing his determination on this issue,

16  Judge Francis noted "The broad, remedial purposes of the

17  FLSA and that the Supreme Court has granted district

18  courts broad discretion to authorize notice and discovery

19  in FLSA actions.  Even," he says "where a plaintiff's

20  motion to certify an FLSA collective action fails to

21  assert facts sufficient to meet the 216(b) threshold,

22  courts in this district have often ordered the disclosure

23  of contact information for potential opt-in plaintiffs,

24  so that discovery into the collective allegations could

25  continue and the plaintiffs could renew their motion for

18

Proceedings

1   certification at a later date."  And he cites a case,

2   Castro v. Spice Place, Inc. 2009 Westlaw 229952 at *3 to

3   *5, Southern District of New York, January 30, 2009 in

4   which the Court denied FLSA collective action

5   certification but granted leave to renew the motion once

6   further discovery had been completed.

7           In reaching his determination, Judge Francis

8   noted that "The plaintiffs in that case alleged that the

9   defendants had committed multiple violations of various

10  provisions of the FLSA and the New York Labor Law with

11  respect not only to them but to multiple additional

12  employees.  Although the facts presented do not

13  sufficiently demonstrate the existence of common policies

14  on the part of the defendants, such that collective

15  action certification is warranted at this time,

16  additional facts may emerge during discovery that further

17  supplement the plaintiff's class claims.  The Court

18  should therefore, deny the plaintiff's motion for

19  certification without prejudice to renewal at a later

20  time and order the defendants to produce contact

21  information for all delivery persons employed by Haru,

22  Too during the past three years."

23          Then there was a question as to the extent of

24  what that contact information should consist of because

25  there was a concern expressed, for example, about the

19

Proceedings

1    disclosure of social security numbers.

2          Judge Francis noted that "Courts in the Second

3    Circuit have become progressively more expansive

4    regarding the extent of the employee information they

5    will order the defendants to produce in FLSA collective

6    actions, even at the pre-certification stage."

7          He cautioned, however, that "The disclosure of

8    employee's social security numbers raises obviously

9    privacy concerns."

10          In concluding his decision, Judge Francis

11    noted, "Because I do not recommend certifying a

12    collective action with respect to any of the plaintiffs

13    claims, it would unnecessarily violate the privacy rights

14    of Haru, Too's employees to order disclosure of any

15    portion of their social security numbers at this time."

16          However, the Court did order production of the

17    names, last known addresses and telephone numbers of all

18    delivery persons that had been employed within the past

19    three years.

20          I find Judge Francis' rationale and conclusion

21    to be persuasive and so I am going to order similar

22    relief here.  However, I am restricting this for the time

23    being because once again, there are complete issues in my

24    mind with regard to who is in this class.  And so for

25    now, with regard to any employee who has the title of

20

Proceedings

1   sales associate or any employee who was performing the

2   work of a sales associate, even without such a title, I

3   am directing the defendants to produce the name, last

4   known address and telephone numbers of those individuals

5   to the plaintiffs and that information is to be turned

6   over within the next ten days.  That takes care of the

7   first issue.

8           MR. LABUDA:  Your Honor, can I make one

9   comment?

10          THE COURT:  Yes.

11          MR. LABUDA:  Just with respect to the telephone

12  numbers --

13          THE COURT:  If you have them.

14          MR. LABUDA:  -- I know that the -- and I am not

15  sure whether or not this was raised in the Benihana case,

16  but clearly there is a disciplinary rule with respect to

17  professional conduct with respect to contacting

18  individuals for the purpose of solicitation via

19  telephone.  And that's the --

20          THE COURT:  And that's true in --

21          MR. LABUDA:  -- Rule 7.3.  And so I think

22  there's an issue there.  Our request would be that we

23  provide the names and the addresses, which doesn't

24  violate the disciplinary rules.

25          THE COURT:  Well, you have a court order -- you

21

Proceedings

1  will have a court order in front of you that says I am

2  directing you to turn over the telephone numbers as well.

3  I am also cautioning the plaintiffs that they're not to

4  be contacting anybody through those telephone numbers.

5  Those are purely for purposes of location information, if

6  necessary, that's it.

7            MR. LABUDA:  Okay.

8            MR. VAGNINI:  Understood.

9            MR. LABUDA:  Okay.  Thank you, your Honor.

10           MR. VAGNINI:  Understood, your Honor.

11           THE COURT:  Okay.  Going over to the motion to

12  quash, this motion obviously is affected by the ruling I

13  just made on the collective action certification motion.

14  Having reviewed the arguments and the applicable case

15  law, I am denying the motion to quash.  However, I am

16  going to modify the subpoena and there's several points

17  that need to be made here.

18           First of all, the failure to give proper prior

19  notice to all parties in this litigation under Rule 45,

20  which by the way, has been interpreted to mean prior to

21  the issuance of the subpoena, and that comes from a case

22  very often cited in these circumstances called Murphy v.

23  Board of Education, 196 FRD 220 at 222.  It's a Western

24  District of New York case from 2000.

25           That was a requirement that should have been

Proceedings

1  observed.  I'm not happy that it was not observed.  I am

2  going to modify the subpoena, as I said, but I am

3  cautioning counsel going forward, anything like this that

4  happens in the future, I will impose a sanction.  The

5  rules are very clear what prior notice means and what is

6  expected to do.

7          On the other hand here, it's also been

8  recognized in the Second Circuit that the failure to give

9  notice itself does not automatically preclude the

10 document discovery that is sought.  That's from <u>Fox</u>

11 <u>Industries v. Gurovich</u>, a decision of Judge Wall from

12 2006, it's 2006 Westlaw 2882580 at *11.  In that case,

13 the defendant learned of the subpoena as Judge Wall

14 found, prior to the production of the documents and

15 therefore, the defendant was not prejudiced.  This, of

16 course, is not to suggest by any means that prior notice

17 -- the prior notice requirement is not important.  It is

18 extremely important and I continue to find that it is

19 extremely important which is again why I am cautioning

20 the plaintiff that moving forward should this happen

21 again, I will impose sanctions.  So, I want to be very

22 clear on that.

23          This issue is also addressed in a case called

24 <u>Malinowski (ph.) v. Wall Street Source, Inc.</u> 2010 Westlaw

25 4967474 at *2.  It's a November 23, 2010 case from the

Proceedings

1   southern district in which the Court said that "Delayed

2   service alone is not a basis to quash a subpoena.  The

3   objecting party must also demonstrate prejudice."

4        And Malinowski cites to an often referenced

5   case in this context called, <u>Kingsway v. Price Waterhouse</u>

6   <u>Coopers, LLP</u>, 2008 Westlaw 4452134, a southern district

7   case from October of 2008.

8        Here, the intent of the prior notice

9   requirement has been effectuated because the defendants

10  have filed a motion to quash.  With regard to that

11  motion, and I said earlier that I am going to modify the

12  subpoena and I am doing so now, the subpoenas as are

13  modified to limit the production to wage information,

14  excluding any social security numbers and dates of birth

15  for Neil Velasquez, Carlos Rivera, and Michael Nozario

16  only for the periods -- the full periods of their

17  employment.  I am not requiring records to be produced

18  for anybody else in this matter, given the ruling that I

19  have made regarding the class -- the collective action

20  certification motion.

21        And moving on now to the status reports that

22  each side filed, and the outstanding issues regarding

23  discovery,  Looking first of all to DE-35, which is the

24  March 14 status  report from the plaintiffs, with regard

25  to the alleged deficient responses, first of all, under

24

Proceedings

1   (a), that issue has been addressed by my ruling on the

2   subpoena.  So, I am not going further with that now, as

3   is subdivision (b).

4            On (c), I will require the defendants to

5   produce the corporate defendant's gross annual revenue or

6   dollar volume, as requested here.  You can redact

7   whatever else you need to redact here but for the four

8   named defendant businesses, that information is to be

9   produced.  And once again, I ma giving ten days for the

10  production.

11           On subdivision (d), it says "The defendants

12  have failed to provide information and documents relating

13  to job titles of individuals who held or currently hold

14  the supervisory role over the plaintiffs and additional

15  class members, as well as the store locations where the

16  supervisors worked."

17           You can disregard the section that says

18  additional class members but I will require the

19  defendants to produce the titles of the individuals who

20  were the supervisors to the three individuals who are in

21  this case at the moment.  And also, the store locations

22  where those supervisors worked; once again, within ten

23  days.

24           With regard to page 3 of this update, and this

25  has to do with an issue that's also mentioned in the

Proceedings

1  defendant's status report which we'll get to in a moment,

2  there's a real issue here with regard to the burden, who

3  basically shares the burden or has the burden with regard

4  to establishing what these folks were paid and any

5  records to support those contentions.

6         I certainly would have expected and if this

7  hasn't been done, I will require it to be done, because

8  there's a reference to this in the defendant's letter

9  with regard to the Rule 26(a) calculations.  Damages are

10  always an evolving issue during discovery up to the point

11  of trial.  What I do expect and I don't know whether this

12  was addressed in the Rule 26(a) disclosures but as I

13  said, if it was not done, it is to be done and you've got

14  ten days to get it done.  And that's at least to

15  enumerate the categories of damages that you are looking

16  for.  For example, one assumes that you're looking for

17  overtime under the FLSA, overtime under the New York

18  Labor Law.  There's also in the complaint, request for

19  liquidated damages, interest, attorney's fees; certainly

20  those categories need to be spelled out and should have

21  been spelled out in the Rule 26(a) disclosures.  As I

22  said, if it was not done, it's to be done within ten

23  days.

24         But I also want to address for a moment the

25  burden here with respect to information concerning hours

26

Proceedings

1    worked by plaintiffs when we're talking about an FLSA

2    action.  And specifically, the FLSA requires employers to

3    maintain accurate records of the hours and wages of their

4    employees.  Section 211(c) requires every employer to

5    make, keep and preserve such records of the persons

6    employed by him and of the wages, hours and other

7    conditions and practices of employment maintained by him.

8         Section 516.2(a)(7) of the Code of Federal

9    Regulations with regard to FLSA matters, requires that

10   employers maintain records of hours worked each work day

11   and total hours worked each work week by employees.  New

12   York State maintains similar record keeping requirements

13   for employers.

14        Section 661 requires employers -- that's the

15   New York State Labor Law, requires employers to establish

16   and maintain payroll records showing for each week

17   worked, the hours worked, the rate or rates of pay and

18   the basis thereof and in conjunction with the New York

19   Codes, Rules and Regulations, Title 12, Section 142,

20   requires employers to establish, maintain and preserve

21   for not less than six years, weekly payroll records which

22   show for each employee, the number of hours worked daily

23   and weekly including the time of arrival and departure

24   for each employee working a split shift or spread of

25   hours exceeding ten.

27

Proceedings

1        In situations where an employer's payroll

2   records are inaccurate or inadequate, an employee has to

3   carry out his burden if he produces sufficient evidence

4   to show the amount and extent of that work as a matter of

5   just and reasonable inference.  That's from the famous

6   Anderson case, Supreme Court case, 328 US at 687.

7        Also, see Reich v. Southern New England

8   Telecommunications Corp., 121 F.3d 58 at 66.  That's a

9   1997 case from the Second Circuit in which the circuit

10  concluded that when a defendant fails to maintain the

11  required employment records, the employee may submit

12  sufficient evidence from which violations of the act and

13  the amount of an award may be reasonably inferred.

14       As courts have found, a plaintiff can meet this

15  burden by relying on recollection alone.  That's from a

16  case called Santian (ph.) v. Kwong Ho 2011 Westlaw

17  4628752 at *16 and that is a very much referenced case at

18  this point because it also collects the cases on that

19  issue.

20       The burden then shifts to the employer to come

21  forward with evidence of the precise amount of work

22  performed or with evidence to negatize the reasonable of

23  the inference to be drawn from the employee's evidence.

24  Again, that's from Anderson, 328 US at 687-88.

25       A similar standard to Anderson is applied in

28

Proceedings

1  deciding overtime claims under New York law.  See <u>Park v.</u>

2  <u>Soul Broadcasting Systems Corp.</u>, 2008 Westlaw 619034 at

3  *8.  That's a southern district case from March 6, 2008.

4        However, the New York standard places a more

5  demanding burden on employers than the FLSA.  See <u>Padilla</u>

6  <u>v. Manlapaz</u>, 643 F.Supp 2d. 302 at 307, (EDNY 2009) in

7  which the Court concluded that after the plaintiff meets

8  its burden, the burden then shifts to the employer to

9  prove by a preponderance of the evidence that the

10  plaintiff was properly paid for the hours worked.  See

11  also <u>Jiao v. Chi Hua Chen</u> 2007 Westlaw 4944767 at *3, a

12  southern district case from 2007 finding that if an

13  employer is unable to meet its burden under the FLSA, it

14  could not satisfy the burden under New York State law.

15        What the plaintiffs are required to produce

16  here, if they have them in their possession, are any pay

17  stubs or reasonable facsimile of the pay stubs they

18  receive while working for these businesses.  Once they've

19  done that, the rest is up to you, counsel, to explore at

20  a deposition.  And I'm certainly -- I don't know --

21  there's a representation here that documentation has been

22  provided and that what's in the plaintiff's possession

23  has been turned over to the defendants.  So, Mr. Vagnini,

24  you need to tell me what that consisted of.

25        MR. VAGNINI:  Whatever payroll records that

Proceedings

1   they had, pay stubs, anything that they maintained

2   relating to their hours worked and wages was provided.

3   That's all they had.

4              THE COURT:  All right.

5              MR. VAGNINI:  It was substantial.  It wasn't

6   everything.

7              THE COURT:  All right.  As I said, you're

8   certainly free to inquire well beyond that at a

9   deposition of these folks when the time comes; all right?

10             MR. LABUDA:  Okay.  Just so I understand,

11  your Honor, when you were referring to the enumeration of

12  the category of damages, is that -- based on what you

13  just said at the end, I am assuming that that means list

14  out, we're looking for overtime but not a specific

15  number.

16             THE COURT:  Correct.

17             MR. LABUDA:  Okay.

18             THE COURT:  Yes.  Again, I expect that number

19  is going to evolve as you go through and they go through

20  depositions here.  All right?  Because you're going to be

21  relying substantially on their testimony because frankly,

22  their testimony alone is sufficient to move the burden

23  over to you; all right?  That doesn't mean that that wins

24  the day.  It just means it shifts the burden.  So -- and

25  you certainly have whatever records you have.  That's

30

Proceedings

1   been pretty clear throughout.  So --

2              MR. LABUDA:  Yes, that had been produced as

3   well.

4              THE COURT:  Yes.  And so as I said, you'll take

5   this up at deposition and I suspect at some point, there

6   will be further motion practice.

7              MR. LABUDA:  Your Honor, just one other

8   question, with respect to (c) --

9              MS. MURRAY:  Yes.

10             MR. LABUDA:  -- you -- I don't take very good

11  notes or too quickly, my understanding was we're to

12  produce documents that contain the gross revenues for the

13  four corporate defendant stores at issue and that we're

14  allowed to redact other --

15             THE COURT:  Yes.

16             MR. LABUDA:  -- information.

17             THE COURT:  There are two things they

18  requested.  Your financial statement, first of all and

19  the corporate tax return and the bottom line here is,

20  they're looking for the annual gross revenue, I suspect

21  here, to establish whether or not the companies are each

22  doing $500,000 worth of business.  That's really all

23  they're entitled to.  So you can redact whatever else you

24  need to redact; all right?

25             MR. LABUDA:  Okay.

31

Proceedings

1    THE COURT:  But for those --

2    MR. LABUDA:  But that would be on --

3    THE COURT:  -- four named business entities,

4 you are to produce that information in redacted form.

5    MR. LABUDA:  And that -- is that on both the

6 financial statements and the tax returns?

7    THE COURT:  Yes.

8    MR. LABUDA:  Okay.

9    THE COURT:  Okay.

10    MR. LABUDA:  All right.  Thank you, your Honor.

11    THE COURT:  All right.  Moving over to the

12 defendant's status report --

13    MR. VAGNINI:  Your Honor, one issue from our

14 status report.  I'm not sure if you were going to reserve

15 the boilerplate objections based on inadmissibility.

16 It's in nearly every response they make.  It's relevant

17 at this stage --

18    THE COURT:  Well, did they not respond after

19 that?

20    MR. VAGNINI:  For most of them, no, they did

21 not.

22    THE COURT:  Well, first of all, I am not sure

23 at this point, some of these responses are going to be

24 altered or the need to respond to them is going to be

25 altered to a degree based on the rulings I've made with

32

Proceedings

1   regard to the collective action certification.  So you

2   need to really all go back and take another look at these

3   but first of all, keeping in mind that the scope of

4   discovery is significantly broader than what is

5   admissible at trial, just because it may not be

6   admissible at trial doesn't mean that it doesn't get

7   produced, if it has any degree of relevancy to what's at

8   stake in the lawsuit.

9           And with that guidance in mind, I am going to

10  direct you all to go back and take another look at the

11  responses.  All right?

12          MR. LABUDA:  Yes, your Honor.

13          MR. VAGNINI:  Yes, your Honor.

14          THE COURT:  Okay.  With regard to the

15  defendant's status report which is at DE-34, we've talked

16  now about the computation of damages and what I am

17  looking to have plaintiffs do here in terms of

18  supplementing their Rule 26(a) disclosures because those

19  are significant and Rule 26(a) disclosures, even though

20  they sound like initial disclosures, often become very,

21  very important in summary judgment.  So, I want to make

22  sure that those are supplemented and that this issue is

23  addressed.  Once again, ten days, okay?

24          MR. VAGNINI:  Yes, your Honor.

25          THE COURT:  With regard to -- I'm on page 2

33

Proceedings

1  now, the second paragraph says "Similarly, plaintiffs

2  have objected to document demands and interrogatories

3  requesting information pertaining to the hours they

4  worked and the wages they were paid each week."

5          With regard to -- I don't know that they have

6  any more documents beyond what they've turned over.  To

7  be honest with you, a portion of this would seem to me to

8  be more appropriate for an interrogatory response, as

9  opposed to necessarily asking for a document when they

10  say they've turned over whatever they have.

11          MR. LABUDA:  Right.  And there was documents

12  and interrogatories, your Honor.

13          THE COURT:  All right.

14          MR. LABUDA:  That's right.

15          THE COURT:  All right.

16          MR. LABUDA:  So, we did request it in an

17  interrogatory.

18          THE COURT:  Okay.  So, I'm not sure -- what was

19  wrong with the interrogatory response?  It didn't list

20  any hours?

21          MR. LABUDA:  Correct.

22          THE COURT:  All right.  Well, you know what

23  your clients are claiming at this point.  Go back and

24  fill in the interrogatories appropriately.

25          MR. VAGNINI:  Sure.

Transcriptions Plus II, Inc.

34

Proceedings

1          THE COURT:  All right.

2          MR. VAGNINI:  Yes, your Honor.

3          THE COURT:  Once again, you have ten days.  And

4    again, that will give you a basis to follow-up at

5    deposition.  That bottom paragraph on page 2, once again

6    much of the response here, I think has been already

7    determined by virtue of the ruling on the class -- excuse

8    me -- the collective action certification motion.

9          And I've indicated what's to be turned over at

10   this point and that goes to people who had the title of

11   sales associate or were performing work that would

12   otherwise be considered to be fulfilling that role, as I

13   stated earlier.

14         All right.  I think that brings me to the end

15   of what I intended to go over with you today and I'll

16   certainly leave the floor open for any other issues that

17   you want to address at this point.  Let me start with the

18   plaintiffs.

19         MR. VAGNINI:  I don't think we have any other

20   issues relating to any of the status issues.  I would

21   assume the Court will post an order on the certification.

22         THE COURT:  You're going to get the -- let's

23   put it this way.  You're going to get a summary order

24   that just lists the rulings and you're certainly free if

25   you want a more amplified record with the rationale for

Proceedings

1  doing so, you can always order a transcript and speak to

2  Ms. Montero, my courtroom deputy and she could make the

3  arrangements for you to order a transcript. All right?

4  　　　　　MR. VAGNINI: Yes, your Honor. And

5  hypothetically, I have to consult back with my office,

6  but I believe a lot of the issues that you've addressed

7  can be rectified relatively quickly with a denial. Is it

8  still the Court's opinion that we should renew an entire

9  motion if we, for example, could amend simply or

10 supplement with the facts that were deficient in the

11 original motion, rather than in doing an entire motion

12 again?

13 　　　　　THE COURT: I think that since the motion has

14 been denied for fairly substantial reasons, you really

15 need to redo the -- submit a new motion.

16 　　　　　MR. VAGNINI: Okay.

17 　　　　　THE COURT: All right?

18 　　　　　MR. VAGNINI: Yes, your Honor.

19 　　　　　THE COURT: All right. Bear with me one second.

20 　　　　　MR. LABUDA: I have one issue, your Honor.

21 　　　　　THE COURT: Yes, go ahead.

22 　　　　　MR. LABUDA: With respect to the motion to

23 quash --

24 　　　　　THE COURT: Yes.

25 　　　　　MR. LABUDA: -- how should we proceed in terms

Proceedings

1    of the third -- notifying the third-party that it's been

2    modified?  Should there be a letter that is sent by

3    plaintiff's counsel?  Can we send the letter?

4              THE COURT:  Let me -- my suggestion to you

5    would be frankly, redo the subpoenas, send a letter to

6    the people on whom you served the subpoenas saying you're

7    withdrawing the original subpoena and you are serving the

8    amended subpoena now, which has been directed by the

9    Court.  All right?

10             MR. LABUDA:  Very good.

11             THE COURT:  And before you do any of that,

12   you're going to show it to counsel.

13             MR. VAGNINI:  Yes, your Honor.

14             THE COURT:  All right?

15             MR. LABUDA:  Before.

16             MR. VAGNINI:  Before.

17             THE COURT:  Before, that's right.

18             MR. VAGNINI:  We'll send it together.

19             THE COURT:  That's the magic word.  That is the

20   magic word.

21             MR. LABUDA:  Okay.  Thank you, your Honor.

22             THE COURT:  All right.  Just bear with me for

23   one second.

24             (Pause.)

25             THE COURT:  I think that's it.  Anything

37

Proceedings

1   further?

2          MR. VAGNINI:  I don't think so, your Honor.

3          THE COURT:  All right.

4          MR. LABUDA:  That's it, your Honor.  Thank you.

5          THE COURT:  I will do my best to get this

6   summary order up between today and tomorrow and as I

7   said, if you need the transcript or want the transcript,

8   talk to Ms. Montero before you leave toady.  All right?

9          MR. VAGNINI:  Okay.

10         MR. LABUDA:  Okay.

11         MR. VAGNINI:  Thank you, your Honor.

12         MR. LABUDA: Thank you.

13         THE COURT:  Have a good rest of the day.  Thank

14   you.

15              (Matter concluded)

16                   -o0o-

17

18

19

20

21

22

23

24

25

38

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **4th** day of **May**, 2012.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.