**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X
NOEL VELASQUEZ and CARLOS RIVERA,
individually and on behalf of all others similarly situated,

                       Plaintiffs,


              v.


DIGITAL PAGE, INC., d/b/a FUSION WIRELESS;
CELLULAR CONSULTANTS INC., d/b/a FUSION
WIRELESS; CELLULAR CONSULTANTS OF
NASSAU ST. INC., d/b/a FUSION WIRELESS;
CELLULAR CONSULTANTS OF FARMINGDALE INC.
d/b/a FUSION WIRELESS; CELLULAR CONSULTANTS
BROADWAY INC., d/b/a FUSION WIRELESS;
CELLULAR CONSULTANTS OF PORT WASHINGTON,
INC., d/b/a FUSION WIRELESS; CELLULAR
CONSULTANTS RIDGEWOOD INC., d/b/a FUSION
WIRELESS; CELLULAR CONSULTANTS OF WEST
ISLIP INC., d/b/a FUSION WIRELESS; WIRELESS
FRANCHISE CORP., d/b/a FUSION WIRELESS;
CELLULAR CONSULTANTS HOLDING CORP., d/b/a
FUSION WIRELESS, and DIGITAL PAGE SALES
CORP., d/b/a FUSION WIRELESS, and
BRANDON HAENEL and ROBERT PACHTMAN,

DECLARATION OF
ROBERT J. VALLI, JR.
IN SUPPORT

11-CV-3892 (LDW)(AKT)




                       Defendants.
------------------------------------------------------------------------X

       I, ROBERT J. VALLI, JR., does hereby declare and affirm as follows:


       1.     I am an attorney at law, admitted to this Court and the bar of the State of New

York.  I represent the Plaintiffs/Opt-ins in this action ("Plaintiffs")

submit this declaration in support of the plaintiffs' Post-Settlement Motion

seeking 1) attorneys' fees; and 2) costs and expenses.

3.      Attached hereto are a series of exhibits which are identified below. Submitted

herewith is a memorandum of law entitled "Memorandum of Law in Support of Plaintiff's Post-

Trial Motions."

## PROCEDURAL HISTORY

4.      This matter, an FLSA misclassification action, was filed with the EDNY on

August 12, 2011.

5.      In October 2011, based upon Plaintiffs' rejection of Defendants improper Rule 68

offers, Defendants sought leave to file motions to dismiss.

6.      On November 1, 2011 the initial conference was held before Judge Tomlinson.

7.      On December 8, 2011, Defendants filed a motion to quash subpoenas for payroll

records.

8.      On December 9, 2011, Plaintiff opposed the motion to quash.

9.      On December 22, 2011, per the Court's bundling rule, Defendants filed a motion to

dismiss, Plaintiff's filed their opposition and defendants filed their reply.

10.      On February 2, 2012, the Court denied defendants motion to dismiss.

11.      On March 13, 2012, Defendants answered the complaint.

12.      On April 26, 2012, Judge Tomlinson denied Plaintiff's motion for collective

certification without prejudice, but ordered defendants to produce records regarding the putative

class.

13.      Defendants filed a Rule 72 motion seeking to have the Court alter its ruling to

deny the certification motion with prejudice and to set aside Judge Tomlinson's rulings as to the

production of records.

14. On June 5, 2012, Your Honor denied defendants application and affirmed Judge Tomlinson's order.

15. In 2012 and 2013 the parties conducted discovery in this matter.

16. On March 20, 2013, Judge Tomlinson granted plaintiffs motion for leave to file a motion for conditional certification.

17. On June 11, 2013, Your Honor denied defendants Rule 72 motion to set aside Judge Tomlinson's order of March 20, 2013 and the matter proceeded with the parties briefing Plaintiff's renewed motion for conditional certification.

18. On July 8, 2013, Your Honor denied defendants motion to reconsider Your February 2, 2012 denial of their motion to dismiss.

19. On July 9, 2013, Defendants' filed a letter motion requesting that Your Honor reconsider the denial of their reconsideration motion.

20. On July 23, 2013, Your Honor denied Defendants reconsideration of the denial of their reconsideration motion.

21. On March 19, 2014, Judge Tomlinson granted plaintiffs' unopposed motion for conditional certification.

22. On November 17, 2014, Your Honor denied Plaintiffs' motion for Summary Judgment and denied Defendant's motion for Summary Judgment, except as to Plaintiffs' "spread of hours" claims.

23. On December 9, 2014, Your Honor denied Plaintiffs' motion for Rule 23 certification.

24. On December 31, 2014, the parties settled this matter in principal, pending a written agreement and informed the Court of same.

25. On February 25, 2015, Your Honor denied Defendants application to keep the settlement confidential.

26.   On February 27, 2015, the parties filed a joint motion in support of the settlement of this action, except as to Plaintiffs' attorneys' fees and costs, which is the subject of this application.

## PLAINTIFFS' ENTITLEMENT
## TO ATTORNEY'S FEES, COSTS AND EXPENSES

27.   Under the FLSA and New York Labor Law, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); N.Y. Labor Law § 663.

28.   Furthermore, the FLSA and New York Labor Law permit awarding of reasonable attorneys' fees and costs in cases of settlements.  Custodio v. American Chain Link & Const., Inc., 2014 WL 116147 at *2 (S.D.N.Y. 2014); Kahlil v. The Original Old Homsetead Restaurant, Inc., 657 F.Supp.2d 470, 474 (S.D.N.Y. 2009).

## ATTORNEY / STAFF HOURLY RATE

29.   Attached hereto as Exhibit "A" is a printout from Plaintiffs' counsels time and billing software which specifically sets forth the amount of hours worked on this case, which attorney/support staff performed such work, when the work was performed, and exactly what each attorney/support staff did in preparing this case.

30.   Exhibit A does not contain block billing, each entry has a sufficient description of the work performed, each entry was made on or about the date of the matter/action and/or event listed and as such Exhibit A should be credited by this Court as a true and accurate record of the time billed on this matter by Plaintiffs' counsel.

31.   While various attorneys in the office worked on the different aspects of the case including the investigative, pleading and settlement aspects, Mr. S. Tito Sinha, was the primary attorney on the case.  As this matter approached a trial ready posture Mr. Valli took a more

active/lead role in the matter. The chart below indicates each person who has worked on this case, the initials of that person that correspond to the initials on Exhibit A, the title of each person along with the hourly billing rates we are seeking.

| NAME | INITIALS | TITLE | HOURLY RATE |
|---|---|---|---|
| Robert J. Valli, Jr. | RJV | Partner | $450.00 |
| Sara W. Kane | SK | Partner | $425.00 |
| James A. Vagnini | JV | Partner | $425.00 |
| S. Tito Sinha | TS | Senior Associate | $375.00 |
| Robert Valletti | RV | Associate | $325.00 |
| Ana Martinez | AM | Para-Professional | $150.00 |
| Justin Levy | JL | Law Clerk | $150.00 |

## THE HOURLY RATES

### Valli Kane & Vagnini LLP

32.    The hourly rates indicated on the attorney worksheet (Ex A) are in accordance with local community standards and are representative of the hourly rates typically charged by Valli Kane & Vagnini LLP ("the Firm") for our work on our cases in the 2012-2014 time frame. Presently, the firm charges more than the rates requested herein. Each attorney/employee who performed work on the case is listed below along with a discussion of why their hourly rates are reasonable.

**BACKGROUND ON FIRM**

33.    Our firm primarily handles plaintiffs' Class Action / FLSA Collective Wage and Hour claims and employment discrimination claims.  Accordingly, the vast majority of our cases are contingency based.  However, the firm sometimes performs work on an hourly basis.  Presently our hourly rates are $500 to $600 per hour for named partners, $400 to $500 for senior associates, $300 to $400 for associates and $150 to $250 for interns, paralegals and other paraprofessionals.  These are our typical hourly rates.  However, there are times when we alter these rates to some degree in the interest of securing a retainer agreement.

34.    Copies of actual current retainer agreements are attached hereto as Exhibit "B".[1] The retainer agreements verify that our hourly rates are $500.00 to $600.00 for partners, $400.00 to $500.00 for senior associates, $300 to $400 for all other associates and $150 to $250.00 for paraprofessionals, law clerks and other employees.

35.    These retainer agreements provide undisputable documentary evidence that these are our typical hourly rates and that these are the rates we can reasonably command in the local marketplace.

36.    VKV has over 50 collective years of litigation experience amongst its partners.  The firm's partners and associates has actively prosecuted well over one thousand individual actions and numerous mass, class and collective actions on behalf of employees under state and federal laws.

37.    The following cases are representative of the firm's dedication to fight for the rights of employees:

---

[1]  I have redacted the retainer agreements, deleting our clients' names, contact information and the name of the entities being sued.  In the event the Court wishes to see an un-redacted copy of these retainer agreements, we can provide same, but request that it be an in camera production.

a.     VKV represented a group of employees in a Title VII action with the Dallas office of the EEOC through the investigative phase and conciliation process where the firm recovered over $2 million dollars as well as widespread injunctive relief for African-American workers.  I can state that it is very rare for the EEOC to work with Plaintiffs' counsel.

b.     *Ahmed, et al. v. TJ Maxx* – 10-cv-3609 (EDNY) –a FLSA and NYLL misclassification case on behalf of potentially thousands of Assistant Store managers. (Rule 72 motion pertaining to conditional certification currently pending).

c.     *Beatty et. al. v. Sara Lee* – 2:14-cv-58 (EDTX – Marshall Division), a mass race discrimination lawsuit, VKV and our local counsel represent over 30 employees who worked at a Sara Lee Bakery plant in Texas. Additionally, the firms represent another group of over twenty charging parties and additional aggrieved parties with similar claims to those in the pending lawsuit which were filed with the EEOC.  The EEOC recently issued a finding of class-wide discrimination against Sara Lee.

d.     *Brown et.al. v. Medicis* – 1:13cv-01345 (DOC) – VKV and Co-lead counsel represent a class of 225 women currently seeking Court approval for a $7,150,000 settlement for gender discrimination under Title VII.

e.     In *Chamseddine, et al. v. IHOP* – 12-cv-1183 (NDTX) – VKV and local counsel represented and settled the claims of a group of plaintiffs in a religious discrimination action.

f.     *Cuthbert v. New Soldiers* - 14-cv-5466 (EDNY) – FLSA action in which defendants defaulted.  The Court issued a judgment for approximately $200,000.00 that we are currently seeking to enforce.

g.     *Diaz, et al. v. S & H Bondi's Department Store* – 10-cv-7676 (SDNY) – representation of a group of employees with FLSA and NYLL claims.

*Estrella, et al. v. Coqui Check Cashing, et al* – 08-cv-5157 (SDNY)

representation and settlement of workers with FLSA and NYLL claims;

i.      *Gambino v. Harvard Protection Services, LLC*, 10-cv-0983 (S.D.N.Y.), a FLSA collective action in which VKV represented a group of security guards. The case was resolved.

j.      *Jackson, et al v. 180 Connect, Inc et al* – 07-cv-5000 (EDNY) – representation and settlement of a group of employees with Title VII race claims;

k.      *Johnson et al v. County of Nassau* - 2:10-cv-02792 (EDNY) - Representation and settlement of an FLSA Rule 216(b) class of employees regarding overtime violations;

l.      *Kudo v. Panda Express Restaurant Group* – 09-cv-712 (S.D.N.Y.), Along with co-counsel represent store managers in nationwide (ex. CA) FLSA collective action wage and hour case. The parties are finalizing a settlement and will be seeking Court approval by the end of March 2015.

m.      *Moore v. The Shaw Group* – 12-cv-757 (LAMD), We along with co-counsel represent 12 individuals who filed race claims in the U.S. District Court for the Middle District of Louisiana. We are in the discovery phase.

n.      *Roberts et. al. v. TJX – 1:13-cv-13142* (D.Mass) – Along with Co-Counsel represent Assistant Store Managers in a nationwide (ex. CA) FLSA wage and hour case and NYLL claims, seeking settlement approval from the Court on the training claim portion of the claims, while the remainder of the litigation is proceeding.

o.      *Sweeney v. United States Postal Service* - 8-cv-04417 (EDNY) - represent approximately 20 plaintiffs in an ADEA collective action pending in the Eastern District of New York. The case was recently settled for $350,000.00.

Marshall) - VKV and their co-counsel obtained a verdict of over $4 Million dollars in a trial before the Hon. Rodney Gilstrap, U.S. District Court, Eastern District of Texas, in which plaintiffs' alleged racial harassment and discrimination by Turner Industries. For this case VKV and our local Texas counsel received the Texas Lawyer publication's employment "Verdicts Hall of Fame" award for 2014.

q.      *United States of America, ex rel, Hinestroza et.al. v. Ralex Services, et al* 10-cv-0822 (EDNY), Qui Tam case where the firm worked with the Government to negotiate and finalize settlement terms on behalf of the Government and the Relator of $2,200,000.

r.      *White, et al. v. City of Dallas – 09-cv-2395* (NDTX) – representation of a group of workers with Title VII claims;

38.     In addition to the above, VKV has and continues to represent hundreds of plaintiffs in wage and hour, collective wage and hour, discrimination, and mass discrimination cases pending in the U.S. District Courts, here in New York and the Middle District of Louisiana and the Eastern District of Texas.

**INDIVIDUAL INFORMATION**

**Robert J. Valli, Jr.**

39.     For the hours that I worked on this matter, this office has billed at a rate of $450.00 per hour. Such rate is reasonable for a number of reasons. First, the Firm normally bills for my services at $550.00 or more per hour, as reflected in the retainer agreements attached hereto as Exhibit "B". Moreover, my qualifications justify such a rate. I am a partner at the Firm with

over twenty-four (24) years of litigation experience. I graduated from St. John's University in 1987 and St. John's University School of Law in 1990.

40. Following my graduation from law school in 1990, I served as an Assistant District Attorney ("ADA") with the Office of the Queens County District Attorney. During my tenure as an ADA, I served in the Intake Bureau, Criminal Court Bureau, Appeals Bureau, Homicide Investigations Bureau and the Supreme Court Trial Bureau.

41. In the approximately seven (7) years working as an ADA, I conducted hundreds of evidentiary hearings, investigated numerous homicides, tried numerous misdemeanor cases and tried over twenty (20) felony cases to verdict.

42. I represented the Office of the District Attorney on over twenty (20) appeals at the Appellate Division, Second Department, and was co-lead counsel representing the Queens District Attorney's Office in the investigation, prosecution and eventual homicide conviction of a sexually sadistic serial killer.

43. In 1997, I joined Leeds & Morelli, Esqs., the predecessor firm to Leeds Brown P.C. and began practicing in the field of civil rights/employment discrimination law. With that firm, I was responsible for a large portion of the litigation and successfully tried various civil rights cases in both Federal and State Court.

44. Presently, I am involved in the majority of the litigation at VKV. In the past five years the firm's practice with respect to discrimination class and mass actions has expanded to include numerous nationwide actions and we are currently co-counsel with some of the most experienced plaintiff's discrimination and wage and hour firms in the nation. Some of the cases are listed above.

45. Below are examples of the cases were I represented the prevailing party in cases in which I served as lead or co-lead trial counsel.

A. *Collins v. Suffolk County Police Department*, et al., 01-CV-4194 (ADS)(EDNY).

B. *D'Annibale v. Ayhan, et al.*, 11-cv-3503 (WFK)(EDNY)

C. *Gunning v. Village of East Rockaway, et al.*, 96-CV-2076 (ADS)(EDNY)

D. *Jattan v. Queens College*, (12367/95) (Queens Supreme Court)

E. *Raghavendra v. The Robert Plan Corporation, et al.*, 96 CV 667 (VPP)(EDNY)

F. *Sommer, et al. v. Aronow, et al.*, 95-CV-9230 (BSJ)(SDNY)[2]

G. *Weeks v. Suffolk County Police Department, et al.*, 03-CV-4294 (LDW)(EDNY)

46.    In addition to the above, I have been lead counsel on many other trials that did not proceed to verdict and further I have represented clients at New York State Division of Human Rights Hearings, Commercial Arbitrations, Temporary Restraining Order hearings in both Federal and State Court and Order to Show cause hearings in both Federal and State Court.

47.    I have represented hundreds of claimants with respect to mass action race and age discrimination cases brought against various Fortune Five Hundred companies which were pending and eventually resolved in confidential ADR hearing/mediations.

48.    I have appeared as a guest speaker on News Channel 12 and as a legal commentator on Court TV.  I have lectured on criminal, civil rights and discrimination laws for a variety of organizations.  I recently lectured to the Federal Bar Association's Labor and Employment division on the impact and use of implicit bias in litigation.

49.    Based on my legal experience and my Firm's reputation, my requested billing rate of $450 per hour is more than reasonable for my time expended in the prosecution of these claims.

**Sara Wyn Kane**

50.    For hours that Ms. Kane worked on this matter, this office has billed at a rate of $425.00 per hour.  Such rate is reasonable for a number of reasons.  First, the firm normally bills at $500.00-$550.00 per hour for her services depending on the nature of the retainer.   Second, as

---

[2] This trial involved contract claims and therefore there was no "prevailing party" as that term is used in the context of an FLSA/NYLL action.

delineated below, her background and experience allows this firm to reasonably command these rates for her legal services.

51.    In 1994, she graduated *cum laude* from Boston University.  In 1998, she graduated *with distinction* from Hofstra Law School in the top 8% of her class.  While attending law school Ms. Kane was the Managing Editor of Articles for the Hofstra Labor & Employment Law Journal, (1997 – 1998).

52.    Following law school, she honed her litigation skills while working as an Assistant Corporation Counsel in the Manhattan Trial Unit for the City of New York.  While defending the City's employees and the City itself, she conducted and defended hundreds of depositions/hearings, participated in extensive discovery, motion practice, pre-trial and trial work.

53.    In 2001, following her tenure with Corporation Counsel, she joined Leeds Morelli & Brown, P.C. (now known as Leeds Brown, P.C.).  While at the Leeds firm, she handled and supervised a caseload which consisted primarily of civil rights discrimination cases, mass action civil rights discrimination cases, and developed an extensive familiarity in the field of employment claims.

54.    Ms. Kane has personally handled hundreds of hearings and mediations on behalf of aggrieved employees regarding claims of discrimination.

55.    In 2005, she co-founded Valli & Kane, now known as Valli Kane & Vagnini LLP.

56.    Although she is involved in all aspects of managing the firm, Ms. Kane is primarily responsible for overseeing the firm's participation in Wage and Hour Collective and Class Actions, False Claims Act cases, Class and Mass Discrimination actions and the confidential Alternative Dispute Resolution of Class/Mass and Individual actions, as well as charges filed with the Equal Employment Opportunity Commission (EEOC) and various equivalent State Agencies.

57.    Further, much of Ms. Kane's work in the firm's ADR practice areas is confidential and as such cannot be named specifically.  However, some examples include:

*a.* Representing hundreds of employees against a large financial institution to resolve a variety of discrimination claims through an ADR process

*b.* Representing hundreds of individuals against a large insurance company to resolve various claims of discrimination through a negotiation process;

*c.* Engaging in a multiple day mediation process to resolve the race discrimination claims of over a dozen employees against an international corporation, which included a multi-million dollar resolution and a *cy pres* component with continual monitoring on an ongoing basis;

58. Additionally, Ms. Kane has worked with and is thought highly of by well-respected and recognized mediators in the discrimination field such as Kathy Fragnoli, Hunter Hughes, Judge Richard Levie, Ruth Raisfield, Mark Segall, Vivian Shelanski, Martin Scheinman, and Margaret Shaw.

59. Ms. Kane has been published twice:

*Proposal for a Model Employee Benefit Program*, Benefits Quarterly, Vol. 14, No. 2, 1998
*Have You Hit The Glass Ceiling?*, Long Island Woman Magazine, Vo. 5, No. 2, 2005

60. Throughout her career, Ms. Kane has appeared on television to discuss employment discrimination claims generally and specifically regarding cases our firm is involved in and she has lectured on the issue of Civil Rights at various events.

61. Based on her legal experience and the Firm's reputation, she has previously been billed at rates exceeding $500 per hour; accordingly, $425 per hour is more than reasonable for the services she provided in this matter.

## James A. Vagnini

62. Throughout his career, Mr. Vagnini's focus was and remains the advocacy and litigation of the civil and human rights relating to fair and equal treatment of employees in the private and public sectors.

63. Mr. Vagnini is a 1998 graduate of Hofstra Law School.

64.    Mr. Vagnini first began his career as an associate with Leeds & Morelli, the predecessor firm to Leeds Brown, representing clients in individual litigation where he practiced the traditional aspects of employment litigation.

65.    However, soon after his start, he dedicated his practice to group and mass litigation, including class and collective action work.  As a result of this concentration, Mr. Vagnini also dedicated countless hours to the development and practice of Alternative Dispute Resolution.  Through this practice alone, Mr. Vagnini has represented thousands of clients working in corporations nationwide who have suffered various forms of discrimination, harassment, wrongful discharge and labor violations.

66.    Specifically, Mr. Vagnini has successfully represented over 2,000 workers in numerous private and government ADR programs across the country wherein he recovered over $25 million in negotiated settlements for his clients. Mr. Vagnini has been specifically sought out by aggrieved employees, nationwide, for his expertise in handling large multi-plaintiff litigation.

67.    Mr. Vagnini acted as co-lead counsel in a mass action co-counseled with the Equal Employment Opportunity Commission in Dallas, Texas.  Mr. Vagnini and our firm recovered nearly $2 Million Dollars in a Consent Decree for 15 litigants in the matter of *EEOC and Eric Mitchel, et al. v. Allied Aviation Services.*

68.    Mr. Vagnini also represented hundreds of employees in a collective action under the ADEA which resulted in a $12 million dollar settlement in the Eastern District of New York and a race discrimination class action in the Southern District that also resulted in a $12 million dollar settlement and injunctive relief.

69.    Mr. Vagnini's cases and practice have been the focus of several panels, discussions, textbooks and lectures, as well as national news publications and specials.  He is a regular guest lecturer at St. John's University Law School where he highlights the litigation aspects of representing workers in America.  Specifically he has lectured on the following subjects:

a)  People of Color, Women and the Public Corporation: Conference on Racial and Gender Equity in the Business Setting Symposium (Panelist)

b)  Race/Gender & Corporate America and Race & Corporate Governance (Guest Lecturer), St. John's University School of Law

### S. Tito Sinha

70.  Tito Sinha has over 14 years of civil rights litigation experience primarily in the areas of employment discrimination and police misconduct having practiced both in New York State Supreme Court and United States District Courts for the Southern and Eastern Districts.

71.  He has represented clients with claims under the New York City Human Rights Law, the New York State Human Rights Law, as well as charges before the Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and other federal laws.  He has also represented clients in wage and hour employment claims involving overtime and minimum wage violations under the Fair Labor Standards Act and the New York State Labor Law.

72.  Mr. Sinha's police misconduct cases involved issues of false arrest, excessive force, malicious prosecution and municipal liability pursuant to 42 USC Section 1983, and the Fourth and Fourteenth Amendments to the U.S. Constitution.

73.  Prior to being in private practice, Mr. Sinha had a broad diversity of experience in civil rights work, public policy, and grassroots community organizing, including serving as staff attorney at Asian American Legal Defense and Education Fund where he worked on voting rights, anti-Asian violence and public education issues among other areas.  He was also a founding board member of South Asian Youth Action, youth center in Elmhurst, Queens.

74.   He is a graduate of City University of New York School of Law and Swarthmore College.   He was admitted to the New York and New Jersey bars in 1998, and is also admitted to the federal district courts of the Southern and Eastern Districts of New York.

### Ana Martinez, Justin Levy and Robert Valletti

75.     The remaining work/hours were performed by one of our current support staff, (Ana Martinez), a former law clerk now admitted to the NYS Bar and working in criminal defense (Justin Levy) and a current associate and former law clerk (Robert Valletti).

76.   Ms. Martinez has been with the firm for five years, handles a variety of matters from intake and client communication to preparing initial drafts of pleadings and discovery.   Given her experience the requested rate is consistent with rates for similar persons in the EDNY.

77.   Mr. Levy is a former law clerk of the firm.   He is a 2012 graduate of Hofstra Law School.   He is currently an Attorney with the New York County defender services.   Prior to working as a law clerk for the firm, Mr. Levy was a Judicial Intern for the Hon. A. Kirke Bartley Jr., New York Supreme Court, 1st Dept, Criminal Term and prior to that a law clerk for Siben and Siben LLP.   The requested rate is consistent with the rates for similar persons in the EDNY.

78.   Mr. Valletti was a law clerk with the firm a few years ago.   He returned to the firm in 2014.   In 2011, he graduated from the Benjamin N. Cardozo School of Law.   Presently, he has 3 years of litigation experience in corporate law, labor and employment law, personal injury litigation, wage and hour litigation and workers compensation.     He recently prosecuted his first trial.   The hourly rate requested is consistent with the rates for associates in the EDNY.

79.    A review of the "Johnson factors" evidences the reasonableness of the fee application. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).  They are discussed below:

### (1) The time and labor required

80.    This case spanned a considerable period of time, and the length was primarily due to the defendants' decision to litigate virtually every issue.  Regarding just the motions filed by the defendants, the docket sheet evidences the following:

  A.  Docket 5 – Letter for leave to file motion to dismiss and Docket 7 - letter in reply;

  B.  Docket 14 – Motion to Quash subpoenas for payroll records

  C.  Docket 16 – Motion to Dismiss

  D.  Docket 40 – Motion to set aside the Court's order (Docket 38).

  E.  Docket 43 – Motion to stay discovery

  F.  Docket 45 – Motion to set aside Judge Tomlinson's order

  G.  Docket 58 – Motion for protective order

  H.  Docket 69 – Letter motion for pre motion conference to dismiss.

  I.   Docket 76 – Letter motion for reconsideration of denial of motion to dismiss (Docket 32).

  J.  Docket 78 – Further letter motion in support

  K.  Docket 79 – Motion to set aside order on motion for disclosure, leave to file, motion to strike and motion to amend/correct/supplement.

  L.  Docket 86 – Motion to set aside order on motion to stay.

M. Docket 91 – Letter application for pre-motion conference – seeking reconsideration of the prior denial of reconsideration.

   N.   Docket 115 – Motion for Summary Judgment

   O.   Docket 135 – Motion for settlement Conference or Mediation.

   P.   Docket 168 – Motion to quash subpoenas for payroll records.

   Q.   Docket 179 – Motion to dismiss opt-in Hugo Destanana.

   R.   Docket 185 – Motion to quash subpoenas for payroll records

  81.  Defendant's opposed Plaintiff's FLSA 216(b) motion to certify the class only to later admit a violation of the FLSA and not oppose the motion.  Further, in an effort to frustrate Plaintiffs' ability to determine the actual wage deficiency for each plaintiff/opt-in, defendants moved to quash each and every payroll subpoena issued by Plaintiffs.

  82.  While defendants certainly have the right to challenge the claims and orders herein, their decision to do so dramatically increased the hours expended by all sides and the Court regarding this action.

  83.  Accordingly, the above documented actions of defendants and a review of the docket history of this case support Plaintiffs' position that the time and labor required were not excessive.

### (2) The novelty and difficulty of the questions

  84.  In this case, Plaintiffs' alleged that defendants misclassified their sales force. Accordingly, this case, as with other misclassification claims, involved a complex analysis of the sales position.  This type of FLSA case (misclassification) is the most complex and difficult to prosecute.   Moreover, as mentioned in (3) below, Defendants fought this action at every turn which made the mundane difficult and the difficult arduous.

### (3) The skill required to perform the legal services properly

85.    Because the defendants engaged in an aggressive litigation strategy that involved the filing of approximately fifteen (15) motions of varying size and complexity, litigating this case required an extensive understanding of the FLSA, the NYLL and the FRCP and FRE.

86.    Similarly, a misclassification case is the most complex wage and hour case to prosecute.

### (4) The preclusion of other employment by the attorney due to acceptance of the case

87.    As a small boutique wage and hour / civil rights firm, VKV is extremely selective in the matters that it chooses to accept and prosecute.  We generally receive between five (5) to ten (10) inquiries per week regarding persons seeking to retain our services.  On average we accept two (2) to three (3) new cases a month, meaning on a percentage bases we reject over 90% of the inquiries we receive.

### (5) The customary fee in the community

88.    The customary hourly rates are discussed in other portions of this submission, mentioned in the cases cited in the Memorandum of Law in Support and attached to this submission as Exhibit C.

### (6) Whether the fee is fixed or contingent

89.    VKV primarily takes cases on a contingent fee basis.  Because contingency fee cases come with a risk of a zero recovery, that risk must be offset by the ability to recover costs and fees in those matters in which the firm is successful.  This is all the more important in matters such as this, where the defendants challenged virtually every ruling, resulting in more hours being expended.

90.    Further on full contingency basis cases we rely upon this Court and other courts to enforce the Attorney Fees provisions of the FLSA and the NYLL so that plaintiffs, regardless of their station in life, have access to competent and affordable legal counsel.

### (7) Time limitations imposed by the client or circumstances

91.    There were no time limitations imposed by the client or the circumstances.  We strive to move all cases forward in a fair and expeditious manner.

### (8) The amount involved and the results obtained

92.    The results obtained were excellent.  Due to the efforts of the plaintiffs and the clear, concise and professional manner in which this claim was prosecuted, Defendants' were forced to admit to a violation of the FLSA and the NYLL.  Plaintiffs received 100% of their back pay, over 50% in liquidated damages and interest on their claims.  Effectively, plaintiffs' recovery is equal to or greater that what they could have achieved at trial.

### (9) The experience, reputation, and ability of the attorney

93.    Please see the above descriptions of the firm and the attorneys involved in the prosecution of this action.

### (10) The "undesirability" of the case

94.    Most attorneys are apprehensive about accepting "misclassification" cases on a full contingency.  However, we understand that most of our clients lack the financial ability to retain an attorney on an hourly basis to prosecute such an action and therefore these cases can be viewed as "undesirable."

95.  N/A

### (12) Awards in similar cases

96.  For cites to similar cases, Plaintiffs respectfully refer Your Honor to the cases cited in the memorandum of law.

### THE NUMBER OF ATTORNEY HOURS

97.  The number of attorney hours represented in the attorney worksheet are reasonable and represent hours that were necessarily expended on this litigation.  In the approximately four years this matter has been pending, VKV expended about 759 hours of time (a portion of which was not charged as discussed below).  For these hours VKV is seeking an attorneys' fee award of $278,091.56.  Given the litany of motions, letter motions and letters filled by defendants, this is more than reasonable.

98.  The hours listed in the attorney worksheet include, among other things, the following work, labor, and services:

    a.  INTAKE

    b.  INVESTIGATION

    c.  PLEADINGS

    d.  RULE 68 AND MOTION TO DISMISS RELATED TO SAME

    e.  MOTIONS FOR CONDITIONAL CERTIFICATION

    f.  DISCOVERY

        i       Documents

ii    Interrogatories

    iii       Depositions

g. MOTIONS TO STAY

h. MULTIPLE MOTIONS FOR RECONSIDERATION

i. MULITPLE MOTIONS TO DISMISS

j. MOTIONS FOR SUMMARY JUDGMENT

k. TRIAL PREPARATION

l. NEGOTIATION OF SETTLEMENT AND SETTLEMENT DOCUMENTATION.

m. POST SETTLEMENT MOTIONS

n. COURT CONFERENCES

99.  This case was not overstaffed in any way. Moreover, some of the time billed in this case relates to the preparation of this application. This would be the very definition of responsible and reasonable billing.

100.  The totals for persons listed on exhibit A is as follows:

| NAME | HOURLY RATE | HOURS | TOTAL |
|---|---|---|---|
| Robert J. Valli, Jr. | $450.00 | 46.78 | $20,365.45 |
| Sara W. Kane | $425.00 | 16.63 | $7,063.38 |
| James A. Vagnini | $425.00 | 54.71 | $22,516.64 |
| S. Tito Sinha | $375.00 | 580.71 | $217,759.79 |
| Robert Valletti | $325.00 | 7.34 | $2,388.02 |
| Ana Martinez | $150.00 | 12.10 | $1,799.99 |
| Justin Levy | $150.00 | 41.35 | $6,198.29 |

101. As discussed below, due to billing judgment the above totals are less than the total that would be derived by multiplying the hours by the hourly rate. Specifically, not charging for all hours worked and billing half the hourly rate for travel results in the slightly lower total being sought by the firm.

## COSTS & EXPENSES

102. Plaintiff's expenses of $5,105.72 are clearly identified on the attorney billing worksheet. All listed costs and expenses were reasonably and necessarily incurred. The fact that approximately 75% of the costs are the filing fee, deposition transcripts and copying costs should be defacto evidence of the reasonableness of the requested figure.

103. The expenses are listed on the bill ("ex A) and are as follows:

   a.   Fedex / mail – 58.74

   b.   Court / Filing fees – $350.00

   c.   Deposition / Transcript fees - $1,825.43

   d.   Copying costs - $523.25

   e.   Process Server costs - $1165.00

   f.   Legal Research - $925.06

   g.   Mileage - $193.24

   h.   Investigation costs - $65.00

104. It should be noted that the bill does not include the costs of telephone calls and other sundry costs and expenses.

105. Exhibit D contains copies of some of the invoices related to the above mentioned expenses and costs.

106.  Regarding the exercise of billing judgment, I would note that at various times during the prosecution of this action the firm decided to "no charge" the time of an attorney.  For instance, the firm did not charge for my time at a Conference before Your Honor because two partners were present.

107.  Similarly, the firm charged ½ the hourly rate for all travel time.

108.  Finally, when the firm was updating research on the FLSA in order to obtain the latest rulings, that time was not charged.

109.  The person involved, the dates on which the firm exercised billing judgment and the hours and costs related to same are as follows:

| PERSON | DATE | HOURS | RATE | TOTAL |
|--------|------|-------|------|-------|
| James Vagnini | 4/27/2011 | 0.42 | $425.00 | $   178.50 |
| James Vagnini | 5/19/2011 | 0.5 | $425.00 | $   212.50 |
| James Vagnini | 11/1/2011 | 1.58 | $212.50 | $   335.75 |
| James Vagnini | 4/26/2012 | 1.67 | $212.50 | $   354.88 |
| James Vagnini | 2/25/2014 | 0.58 | $425.00 | $   246.50 |
| Robert Valletti | 6/23/2014 | 4 | $325.00 | $ 1,300.00 |
| Robert Valletti | 10/16/2014 | 2.41 | $325.00 | $   783.25 |
| Robert Valli | 11/17/2014 | 1.25 | $450.00 | $   562.50 |
| Robert Valli | 11/17/2014 | 1.58 | $225.00 | $   355.50 |
| Sara Kane | 11/21/2014 | 0.17 | $425.00 | $    72.25 |
|  |  |  |  |  |
|  |  | 14.16 |  | $ 4,401.63 |

110.  This exercise of billing judgment avoids double billing and ensures that the bill is fair and reasonable.

111.  Please note that due to the exercise of billing judgment and the rounding applied by the billing program, the total fee sought will be slightly different than that listed on the bill.

WHEREFORE, the Plaintiffs respectfully requests that their motion for attorney's fees and

costs be granted in its entirety, together with such other and further relief as the Court deems just and

proper.

Dated:  March 20, 2015
         Garden City, New York


                                              s/*Robert J. Valli, Jr.*
                                              Robert J. Valli, Jr.
                                              Valli Kane & Vagnini LLP
                                              600 Old Country Road, Suite 519
                                              Garden City, NY 11530
                                              516-203-7180

cc:     Jaime Felsen
        Milman Labuda Law Group PLLC